Page 1

```
 1                  UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2
                    Judge A. Jay Cristol
 3

 4   IN RE:

 5   SOLID ROCK MISSIONARY      CASE NO: 12-11456-BKC-AJC
     BAPTIST CHURCH, INC.,
 6
               Debtor.
 7   _____/

 8
         MOTION TO DISMISS CASE AS BAD FAITH FILING OR
 9       IN THE ALTERNATIVE MOTION FOR RELIEF FROM STAY
         OR IN THE ALTERNATIVE MOTION FOR ADEQUATE
10       PROTECTION FILED BY CREDITOR EVANGELICAL
             CHRISTIAN CREDIT UNION (25)
11

12
                       MAY 9, 2012
13

14

15

16       The above-entitled cause came on for hearing

17   before the HONORABLE A. JAY CRISTOL, one of the Judges

18   in the UNITED STATES BANKRUPTCY COURT, in and for the

19   SOUTHERN DISTRICT OF FLORIDA AT LARGE, at 51 SW 1st

20   Avenue, Miami, Dade County, Florida, commencing at or

21   about 2:00 p.m. on May 9th, 2012, and the following

22   proceedings were had:

23

24

25                   Reported by: Carmen E. De La Cruz
```

```
 1                APPEARANCES:
 2

          SHUTTS & BOWEN, by
 3        HARRIS KOROGLU, Esquire
          On behalf of Evangelical Christian Credit
 4        Union, Secured Creditor.
 5

 6        LIEDERMAN SHELOMITH, by
          ZACH B. SHELOMITH, Esquire
 7        On behalf of the Debtor.
 8

 9        OFFICE OF THE UNITED STATES TRUSTEE, by
          JOHANNA ARMENGOL, Attorney-at-Law
10        On behalf of the U.S. Trustee.
11

12        ALSO PRESENT:
          PASTOR TROUP
13
          BARBARA CARGILL, via telephone
14
15
16
17
18
19
20
21
22
23
24
25
```

1        THE COURT:  Solid Rock Missionary Baptist
2   Church.
3        MR. KOROGLU:  Good afternoon, again, Your
4   Honor.  Harris Koroglu, Shutts & Bowen, on behalf of
5   the secured creditor, Evangelical Christian Credit
6   Union.
7        MR. SHELOMITH:  Good afternoon, Your
8   Honor.  Zach Shelomith on behalf of the debtor.
9        THE COURT:  Okay.
10       MR. KOROGLU:  Your Honor, we are here
11  today on the continued hearing on the credit union's
12  Docket Entry 25.  It was a motion to dismiss, motion
13  for stay relief and motion for adequate protection.
14       We were here 29 days ago, and this is just
15  by way of refreshing your memory, this is a single
16  asset real estate case where the debtor is a church,
17  operates a church, has one asset and it's worth
18  1.7 million.  The credit union has a judgment for
19  upwards of $4.4 million.  The debtor has no unsecured
20  creditors, no employees and, respectfully, no
21  prospects for a successful reorganization.  The credit
22  union will control -- is going to be impaired and will
23  control the secured and unsecured classes here.
24       You informed the debtor that really the
25  best options are to find new a lender or perhaps put

1    together a plan in 30 days that could be confirmed.  I
2    submit to you my understanding is there is no new
3    lender in place, and there is not a plan on file,
4    certainly not one I believe that, despite the
5    abilities of Mr. Shelomith, could be confirmed in this
6    case under the facts.  A review of the monthly
7    operating reports since this case was filed would
8    show, it was filed on January 19th, January shows
9    negative $4,500 net income, February shows negative
10   $1,100 net income, and March shows negative in $5,400
11   net income.
12              And so, despite the debtor's desire to
13   continue this case along and make adequate protection
14   payments, I just don't believe it's necessarily
15   justified or appropriate here.  That's why I'd ask,
16   respectfully, that the Court enter stay relief.  If
17   necessary, you know, conditioning it 60 days out so
18   the current school year can conclude as there is a
19   separate entity operating on the premises, so they can
20   finish their school year, give the church time to
21   gather its things and find a new location.
22              THE COURT:  Mr. Shelomith.
23              MR. SHELOMITH:  Thank you, Your Honor.  At
24   the last hearing what the church was hoping for is --
25   was to work out some sort of monthly payment

1  arrangement to -- and to propose a plan that would
2  reorganize the loan.  Since then, since the last
3  hearing, the church's focus has now been on finding an
4  investor to purchase the church, or purchase the
5  property, and to allow the church and the school that
6  is run on the church to remain in possession, and
7  Pastor Troup is here in the courtroom.  He is doing
8  all he can to find that investor.
9          Counsel and I have figured out what the
10 monthly adequate protection payments would be.  The
11 church is completely willing to make those adequate
12 protection payments based on the value of the property
13 which is undisputed at $1.7 million, and the note rate
14 of 6.25 percent.  That would equate to monthly
15 adequate protection payments of $8,854.17.
16          THE COURT:  Let me ask you a question.
17 Based on these last three month's statements, how can
18 you make those payments?
19          MR. SHELOMITH:  I think the church is a
20 little more -- is a little healthier than advertised.
21 When I look back at the monthly operating report that
22 counsel was talking about, $10,000 of the expense was
23 actually a depreciation expense.  They're at -- the
24 ending balance in the DIP account at the end of March
25 was $20,000.  It's more than that right now.

1       So, the church's donations have increased,
2  the number of students at the school have increased.
3  The debtor is able to make these adequate protection
4  payments for a period of time to allow them to find a
5  buyer that will pay off the credit union.  The credit
6  union has made it very clear that they would not
7  accept anything less than the full amount, the church
8  understands that, and they're willing to make these
9  payments, provide adequate protection to the church --
10 I'm sorry, to the credit union, and find a buyer and
11 pay them off, pay off the credit union.
12         THE COURT:  Does the United States Trustee
13 have any input?
14         MS. ARMENGOL:  Your Honor, no, just to say
15 that the debtor has been complying with the
16 guidelines.  We don't have any problem with them.
17         THE COURT:  Okay.  Mr. Schuster.
18         MR. KOROGLU:  Harris Koroglu for the
19 credit union, Your Honor.  Yes --
20         THE COURT:  Oh, I'm sorry.
21         MR. KOROGLU:  We used to work together, so
22 that's understandable.  The credit union does agree
23 that those -- that would be the appropriate adequate
24 protection payment, but doesn't believe that it's
25 justified here.  To the extent the Court is ordering

1  that the debtor be allowed to continually make
2  adequate protection payments, that would be the
3  number.  Moreover, would ask that the debtor maintain
4  insurance for the value of the property.
5           The debtor does have insurance on the
6  property for $1 million.  However, since August of
7  2009 because it's been short of the value and that
8  value has continued to depreciate, the credit union
9  has maintained forced placed insurance.  And I submit
10 to the Court that last month's monthly premium by the
11 credit union was over $2,950.
12          THE COURT:  That much?
13          MR. KOROGLU:  Yes.  And that's at the
14 current value of the 1.7.  Obviously, it was higher as
15 the property was worth significantly more before, but
16 it has just continued to depreciate.
17          THE COURT:  So it would appear that --
18 what about the forced placed insurance, how much is
19 the bill on that so far?
20          MR. KOROGLU:  To date, I think a lot of
21 that is folded into the judgment, which is --
22          THE COURT:  Oh, but as to since we got
23 here?
24          MR. KOROGLU:  I can do the simple math,
25 but you're talking the full month of February, March

```
 1  and April at almost $3,000 a month.
 2              THE COURT:  I thought you said $2,000 a
 3  month.
 4              MR. KOROGLU:  Well, $2,953.
 5              THE COURT:  Oh, $3,000 a month.  Okay.
 6              MR. KOROGLU:  So you're talking, you know,
 7  the full three and a half months plus, so over 10,000.
 8              THE COURT:  Over $10,000, plus those
 9  payments.  What about it, Mr. Shelomith, how -- you
10  can't expect the lender to fund the insurance.
11              MR. SHELOMITH:  Well, there is insurance
12  on the property, it's just not for the full 1.7.
13              THE COURT:  I understand, but therefore
14  they had the right to force place it.  Now, if you can
15  increase it at a lower rate that would be good, but I
16  think that what we probably ought to do in this case,
17  I think that the lender has been gracious in offering
18  to allow the sale to go out past the school year so
19  that these people will not be very inconvenienced.
20              I think what we can do is we can grant the
21  stay relief and allow them to set the sale out at that
22  date with the understanding that if you can come in
23  and come up with funding that will meet the adequate
24  protection payments and reimburse the forced placed
25  insurance, which is, sounds like nine -- sounds like
```

1  about pretty close to $11,000, if those payments
2  could be made, the Court would consider stopping the
3  sale down the line to let them have more time as long
4  as they are being protected, but I don't think the
5  Court has the power to tell these creditors that
6  because they're a worth while cause and doing noble
7  deeds that they can do it at the creditor's expense.
8  They have to do it at their own expense.
9             So, I would hope that --
10            PASTOR TROUP:  Your Honor, there's more to
11 it than that.
12            THE COURT:  Mr. Shelomith, do you want to
13 talk to your client?
14            MR. SHELOMITH:  Sure.
15            THE COURT:  He says there's more to it.
16            MR. SHELOMITH:  Well, I think the more to
17 it that the pastor is referring to is perhaps the fact
18 that maybe the property need not be insured for the
19 full 1.7 million because this is a pretty large piece
20 of property and a building that sits on the property.
21 So, what the pastor would be telling you is that --
22            THE COURT:  Oh, so you're saying that if
23 the building were totally destroyed you would still
24 have the land value?
25            MR. SHELOMITH:  Correct.

1            THE COURT:  Well, what about that, why
2    would you need to insure for the full 1.7 when you've
3    got the land under it, and how many acres was it, was
4    it five acres?
5            MR. SHELOMITH:  Five acres, yes.
6            THE COURT:  Okay.
7            MR. KOROGLU:  Your Honor, I have a copy of
8    the latest appraisal which is as of the end of
9    September 2011, and I'm trying to locate if there's a
10   distinction between just the net value -- at least in
11   terms of the real estate tax assessment, the land
12   assessment was at 382,000 and the building assessment
13   was north of 1.9 million.  I know that's just the
14   assessment, I'm just trying to find more information
15   for you and, for the record, this appraisal was
16   attached to our motion to dismiss.
17           MR. SHELOMITH:  Your Honor, while counsel
18   is looking for that, the pastor did raise a point that
19   his insurance agent asked the credit union how much
20   insurance is to be maintained on the property, the
21   insurance agent is not here today, was apparently told
22   a million dollars, and that's why the debtor got the
23   million dollar policy a few years ago and has been
24   making payments in that amount.
25           So, we would request that in order to

1   adequately protect the credit union that the full
2   $1.7 million of insurance need not be maintained.
3              THE COURT:  Well, let me say, if the
4   property's worth -- what did he say, three hundred.
5   Say if it's worth 400,000, you're still short 300,000,
6   with your numbers.
7              MR. SHELOMITH:  There would be some
8   increase.
9              THE COURT:  And if it's worth a million
10  nine, you're short 500,000.  I mean, if you need to
11  have an evidentiary hearing on that issue to determine
12  whether or not that amount has to be paid, we can have
13  an evidentiary hearing.  If you're saying that they
14  shouldn't have put that insurance on and they have
15  that agreement -- I mean, I'm sure if that's what
16  you've been told, but that doesn't prove it in court.
17  And so, that's another thing we can do during this
18  60-day period.  If that would be helpful to you, to
19  establish that you don't need to -- that they made a
20  mistake in putting the forced placed insurance then
21  that would be to the benefit, but, again, I don't know
22  what else we can do.  It's a pretty bleak situation.
23             MR. SHELOMITH:  It's pretty bleak, but the
24  church is doing -- the pastor is doing everything that
25  he can to find a new investor.  Pastor?

1          PASTOR TROUP:  We can pay $8,000.
2          MR. SHELOMITH:  Yes, and the pastor
3    believes that the adequate protection aspect of what
4    would be needed to adequately protect the credit
5    union, the 8,854.17, can rather easily be made.  So
6    really what the difficulty would be is, and the
7    parameters that we would seek from the Court is, what
8    amount of adequate insurance.
9          THE COURT:  Well, as I say, I'm not in a
10   position to come off the cuff on that.  The bank says
11   it's $3,000 a month, and you say there's an agreement,
12   and if you want an evidentiary hearing to prove that
13   the bank had given that away, we'll certainly give you
14   that evidentiary hearing.  If you can prove that the
15   bank said you only needed a million, then I don't
16   think they can charge you for the forced placed
17   insurance.  On the other hand, if you can't prove
18   that, then that's where we're at.
19          MR. KOROGLU:  The forced placed has been
20   in place since August of 2009.  So, it's to the extent
21   that the debtor was charged with forced placed
22   insurance and that was folded into the judgment prior
23   to the petition date, I think that is res judicata.
24   But to the extent that there's an issue of whether --
25          THE COURT:  Well, when was this agreement

1  for a million dollars worth?
2              MR. SHELOMITH:  June 2011, after the --
3              THE COURT:  Well, I repeat, I don't know.
4  I've heard two sides of an issue.  There's forced
5  place that wasn't necessary.  If you want to have an
6  evidentiary hearing to determine whether it's
7  necessary, we can do that and we can give you a
8  hearing in a short period of time.
9              MR. SHELOMITH:  I think that would be best
10 simply so we can come to a finality on what that
11 aspect would be.
12             THE COURT:  Okay.  Then the Court will
13 allow you, Mr. Koroglu, to draw an order granting the
14 stay relief, to set a sale 60 plus days out, and it
15 should be noted in the order that the Court may
16 reconsider this matter based on a determination that
17 the bank can be adequately protected if the sale is
18 delayed.
19             Now, as to the forced placed insurance,
20 we'll set a hearing.  How much time do you need to get
21 ready?
22             MR. SHELOMITH:  If I can have a moment
23 with my client just to see where these people are
24 located?
25             THE COURT:  Okay.

1        (Thereupon, Barbara Cargill was contacted
2   via telephone.)
3        MS. CARGILL:  Yes, Judge.
4        THE COURT:  Hi. On this Solid Rock
5   Missionary, we need a hearing date, an evidentiary
6   hearing date, and I'm waiting to hear -- how soon do
7   you need it?
8        MR. SHELOMITH:  I believe no earlier than
9   around 20 days, Your Honor, if that's okay.
10       THE COURT:  You got something about 20
11  days out, maybe a half hour, an hour.  How much time
12  do you think you'll need?
13       MR. SHELOMITH:  I don't think any more
14  than a half an hour.
15       THE COURT:  All right.  A half an hour.
16       MS. CARGILL:  How about May 31st at 11:30.
17       THE COURT:  Does that work for you
18  gentlemen?
19       MR. SHELOMITH:  Let me see.  That's good
20  for me, Your Honor.
21       THE COURT:  Good for Mr. Shelomith.  What
22  about it, Mr. Koroglu?
23       MR. KOROGLU:  Yes, I'm before you at 2:00.
24       THE COURT:  Okay.  Then 11:30 on the 31st,
25  and if we need any extra time, we can skip lunch.

1            MR. KOROGLU:  Your Honor, just to clarify
2    this is to determine the amount, if any --
3            THE COURT:  Well, no, this is to determine
4    the issue of whether you're entitled to be
5    compensated for the forced placed insurance.
6            MS. CARGILL:  Judge, can I hang up?
7            THE COURT:  Yeah, you're through, Barb.
8    You're seeking a reimbursement, I presume, I think you
9    said from the date of the judgment forward, for the
10   forced placed insurance because the other money is
11   folded into the judgment, right?
12           MR. KOROGLU:  Yes.
13           THE COURT:  So that's what you're seeking.
14   And Mr. Shelomith's client is taking the position that
15   you had an agreement that this insurance was adequate.
16   So, if they were told this was inadequate, then there
17   would be no reason for you to be paying for the forced
18   placed.  On the other hand, if you can't prove that
19   they had this agreement, then they'll have to come up
20   with the money for the forced placed insurance.
21           MR. KOROGLU:  And so at that time is when
22   we talk about putting together an order for the
23   monthly adequate protection payments, or am I going to
24   fold that into this order?
25           THE COURT:  No, no -- well, we're aware

1   that Mr. Shelomith has represented that and we've
2   given you the stay relief and, as I say, I indicated
3   that we might reconsider the order if they can
4   demonstrate adequate protection, but they're going to
5   have to come up and when they come back to stop the
6   sale, if it gets down there, they're going to have to
7   show that they've got enough cash in the pot to cover
8   the adequate protection in order to stop the sale.  In
9   other words, see, I don't want them to start paying
10  you now and then lose the property and lose the
11  payments.  So, if they can build a pot that would
12  protect you in time to stop the sale, then they can
13  give it to you then and then we'll stop the sale and
14  let it go on forward, but for the time being now,
15  they've got to scrape the money together and put it in
16  the fund.  And as I say, they have high hopes they can
17  do it.  I don't know if they can do it or they can't
18  do it.  They may or they may not be able to.  Debtors
19  always think they can, but they sometimes cannot even
20  though they hope they can.
21          MR. KOROGLU:  Just to clarify for me, Your
22  Honor, one more, talking about enough money to make --
23  to have the adequate protection from the petition
24  date, to the date whenever the debtor --
25          THE COURT:  Well, whenever the adequate

1  protection is due.  I don't remember what the date is,
2  I presume it's the petition date, is that not correct,
3  Mr. Shelomith?
4              MR. KOROGLU:  From the petition date
5  forward or from 30 days after the --
6              THE COURT:  Anyhow, that's something that
7  you folks can discuss.  And, of course, you need to
8  exchange any evidence, any documentary evidence you're
9  going to present and, as I say, if Mr. Shelomith and
10 his client prevail on the insurance amount, then they
11 only need to come up with the adequate protection
12 payments.  If they do not prevail on that, then they
13 can still go forward if they will provide the adequate
14 protection payments and reimburse the forced placed.
15 So, that would be harder for them I'm sure because it
16 adds another $3,000 a month, but I wish you all good
17 luck and I hope you're able to do something to save
18 this operation, but I must say that I'm not an
19 optimist although debtors are always optimistic, until
20 the last moment in most cases.  So I understand the
21 debtor's position and I understand the lender's
22 position.
23             Anything else we can do here today?
24 Madam United States Trustee?
25             MS. ARMENGOL:  No, Your Honor.

1            THE COURT:  Okay.  Well, wish you good
2    luck.
3            MR. SHELOMITH:  Thank you.
4            THE COURT:  And you can exchange orders
5    before you submit them.
6            MR. KOROGLU:  Yes.
7            MR. SHELOMITH:  Thank you.
8               (Thereupon, the hearing was concluded.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1              CERTIFICATION

2

3  STATE OF FLORIDA )

4                   )

5  COUNTY OF MIAMI-DADE)

6

7         I, Carmen E. De La Cruz, Shorthand Reporter

8  and Notary Public in and for the State of Florida at

9  Large, do hereby certify that the foregoing

10 proceedings were taken before me at the date and place

11 as stated in the caption hereto on Page 1; that the

12 foregoing computer-aided transcription is a true

13 record of my stenographic notes taken at said

14 proceedings.

15

16

17        WITNESS my hand this 2nd day of July, 2012.

18

19

20                         _____

21                         Carmen E. De La Cruz

22                         Court Reporter and Notary Public

23                         DD545111 Expiration Date 08/2014

24

25